*Nancy K. Kopp et al. v. Dennis R. Schrader et al.,* No. 72, September Term, 2017

IN 2016, THE GOVERNOR APPOINTED WENDI PETERS AS SECRETARY OF THE DEPARTMENT OF PLANNING AND DENNIS SCHRADER AS SECRETARY OF THE DEPARTMENT OF HEALTH, AND, ON THE FIRST DAY OF THE 2017 SESSION OF THE GENERAL ASSEMBLY, SUBMITTED BOTH NAMES FOR CONFIRMATION BY THE STATE SENATE.  BEFORE THE SENATE ACTED ON THOSE NOMINATIONS, THE GOVERNOR WITHDREW THEM AND DID NOT NOMINATE ANY REPLACEMENT. AFTER THE SESSION ENDED, THE GOVERNOR REAPPOINTED MS. PETERS AND MR SCHRADER.

DURING THE 2017 SESSION, THE LEGISLATURE LEFT INTACT APPROPRIATIONS FOR THE SALARIES OF THE TWO SECRETARIES INCLUDED IN THE FY 2018 BUDGET BILL BUT ADDED LANGUAGE TO THE BILL (§ 30) THAT EFFECTIVELY PRECLUDED ANY FUNDS IN THE BUDGET FROM BEING USED TO PAY THE SALARIES TO MS. PETERS AND MR. SCHRADER.  IN ACCORDANCE WITH THAT LANGUAGE, THE STATE TREASURER REFUSED TO ISSUE PAYROLL CHECKS TO THEM FOR ANY PERIOD AFTER JUNE 30, 2017, NOTWITHSTANDING PAYROLL WARRANTS ISSUED BY THE STATE COMPTROLLER. IN AN ACTION BROUGHT BY MS. PETERS AND MR. SCHRADER, THE CIRCUIT COURT DECLARED THEIR REAPPOINTMENT VALID AND § 30 UNCONSTITUTIONAL.

THE COURT OF APPEALS HELD (1) THAT, BECAUSE THE SENATE HAD NOT REJECTED THE NOMINATIONS, NOTWITHSTANDING AN OPPORTUNITY TO DO SO, THE REAPPOINTMENTS WERE VALID UNDER ART. II, §§ 11 AND 12 OF THE STATE CONSTITUTION, AND (2) THAT BASED ON CLEAR LANGUAGE FROM *BAYNE v. SECRETARY OF STATE*, 283 MD. 560 (1978), § 30 WAS INVALID AND UNENFORCEABLE.  THE CASE WAS REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THE APPELLATE OPINION.

Circuit Court for
Anne Arundel County
Case No. C-02-CV-17-2227
Argued 5/7/18

IN THE COURT OF APPEALS

OF MARYLAND

No. 72

September Term, 2017

_____

NANCY K. KOPP, *et al.*

v.

DENNIS R. SCHRADER, *et al.*

_____

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Wilner, Alan M. (Senior Judge, Specially
Assigned)

JJ.

_____

Opinion by Wilner, J.
Barbera, C.J., Adkins, and McDonald, JJ.,
concur and dissent.

_____

Filed: June 21, 2018

On its face, this case is a dispute between the State Treasurer and two former gubernatorial appointees over whether those appointees are entitled to be paid for the services they rendered in their appointed positions. It emanates, however, from a disagreement between the Governor and the General Assembly over whether the "design" of the Maryland Constitution places a limit on the Governor's appointing authority that the text of the Constitution does not place.

It is a disagreement that, if truly requiring a judicial resolution, could have found one simply, quickly, and cleanly through a declaratory judgment action testing the validity of what the Governor did in this case.[1]  Instead, the response chosen by the Legislature has brought before the Judicial Branch not just the validity of the Governor's action but a host of collateral Constitutional issues involving the duties and authority of the State Comptroller, the duties and authority of the State Treasurer, the scope of the General Assembly's budgetary authority under Article III, §52 of the Constitution, separation of powers issues under Article 8 of the Md. Declaration of Rights, the Governor's appointment and removal authority under Art. II, §§ 11 and 15 of the Constitution, Article III, § 33 of the Constitution prohibiting "special laws," and the sovereign immunity of the State.

<u>BACKGROUND</u>

---

[1] *See* Md. Code, § 3-402 of the Courts Article, describing the Declaratory Judgment Act as "remedial" with a purpose "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations," and to "be liberally construed and administered."  *See also Board v. Attorney General*, 246 Md. 417 (1967).

On July 6, 2016, Governor Hogan appointed Wendi Peters as Secretary of the

Department of Planning. The salary for that office was set in the State Budget at

$137,749. On December 15, 2016, the Governor appointed Dennis Schrader as Secretary

of the Department of Health. The salary for that office was set in the State Budget at

$174,417. Both appointments were subject to the advice and consent of the Maryland

Senate. They were what is known as "recess" appointments – appointments made while

the Senate was not in Session – and, pursuant to Art. II, § 11 of the Constitution, the

Governor sent the names of both individuals to the Senate on the first day of the 2017

legislative Session (January 11, 2017). In accordance with Senate Rule 22A, both

appointments were referred for consideration by the Senate Executive Nominations

Committee.[2]

On March 13, 2017, that Committee voted against sending Ms. Peter's nomination

to the full Senate. The Governor withdrew the nomination that same day. By March 31

– the 79th day of the 90-day Session – the Committee had taken no action on Mr.

Schrader's nomination, and, on that day, the Governor withdrew his nomination as well.

---

[2] Article II, §§ 11 and 12, both dealing with recess appointments, refer to those appointments as both appointments and nominations, because they partake of both. They are appointments in the sense that, once the formalities – issuance of a commission and taking the prescribed oath – are satisfied, the appointee holds the office, but only until the end of the next Session of the Legislature. For the appointment to continue beyond that date, the Senate must at least consent, if not advise. To that extent, the appointments are regarded as nominations for continuance in office. For convenience and clarity, we shall refer to the submission of Ms. Peters' and Mr. Schrader's names to the Senate in January 2017 as nominations and to their initial appointments in 2016 and their reappointments in April 2017 as appointments.

Thus, when the General Assembly adjourned its 2017 Session on April 10, 2017, the Senate had taken no action on either nomination and the Governor had not appointed anyone else to either position. A vacancy therefore existed in both offices. On April 11 – the day following adjournment – the Governor filled those vacancies by reappointing Ms. Peters and Mr. Schrader. For the second time, they became recess appointees.

Obviously anticipating that prospect, the General Assembly sought to thwart it during its 2017 Session by adding language to the FY 2018 Budget Bill (House Bill 150, 2017 Md. Laws, Ch. 150) that purports to preclude Ms. Peters and Mr. Schrader from being paid any part of the salary that they otherwise would have been entitled to receive as Secretaries of the respective Departments. That was done by adding to the Budget Bill transmitted to the General Assembly by the Governor pursuant to Art. III, § 52 of the Constitution a new § 30 containing the following four paragraphs:

> "That no funds in this budget may be expended to pay the salary of a Secretary or an Acting Secretary of any department whose nomination as Secretary has been rejected by the Senate or an Acting Secretary who was serving in that capacity prior to the 2017 session whose nomination for the Secretary position was not put forward and approved by the Senate during the 2017 session unless the Acting Secretary is appointed under Article II, Section 11 of the Maryland Constitution prior to July 1, 2017."

> "Further provided that no funds in this budget may be expended to pay the salary of a Secretary or Acting Secretary of any department who was a recess appointment in 2016 and whose nomination as Secretary was put forward and was not acted upon by the Executive Nominations Committee, or whose nomination was rejected by the Executive Nominations Committee and whose nomination was withdrawn before the full Senate acted."

> "Further provided that no funds in this budget may be expended to pay the salary of an Assistant Secretary or Deputy Secretary who was a recess appointment as Secretary in 2016 and whose nomination was rejected by

3

the Executive Nominations Committee and was withdrawn before the full Senate acted or whose nomination was not acted on or whose nomination was not acted upon by the Executive Nominations Committee."

"Nothing in this language may be construed to prohibit employment in State Government not serving in a leadership capacity in the Agency or Department in which the Secretary or Acting Secretary's nomination as Secretary was put forward and was rejected by the Executive Nominations Committee or who was not acted upon by the Executive Nominations Committee."

There does not appear to be any dispute that the only persons to whom this language could apply or was intended to apply were Ms. Peters and Mr. Schrader. The language had no effect until July 1, 2017, when the 2018 fiscal year commenced. Ms. Peters and Mr. Schrader were paid the salaries set by law for their respective offices through June 30. There was, however, correspondence between the Governor's Office, the Attorney General's Office, the Comptroller's Office, and the Treasurer's Office regarding what would happen come July 1.

The Attorney General's Office, in a June 27, 2017 advice letter based on prior Opinions of the Attorney General, concluded that the Governor had the Constitutional authority to make the two recess appointments. The letter continued, however, that, notwithstanding that conclusion, the language in § 30 of the Budget Bill was a valid exercise of legislative authority. In a July 3, 2017 follow-up letter, the Attorney General personally expressed his view that, even if the two recess appointments "are assumed to be valid," § 30 effectively "stripped" the appropriation for the salaries and was a valid exercise of legislative authority under Article III, § 52(6) of the Constitution. In a

4

response to the Attorney General, the Chief Legal Counsel to the Governor disagreed with the latter conclusion.

Caught in the middle, the Comptroller, on July 7, 2017 formally requested the Attorney General's Office to seek "legal clarification" of the dispute through a judicial action, barring which the Central Payroll Bureau, a unit within the Office of the Comptroller, would be "obligated to follow the longstanding process that governs personnel compensation and therefore will continue to issue warrants of salary payments to Secretaries Peters and Schrader." When the Attorney General declined his request to seek judicial action, the Comptroller, pursuant to that determination, included in his payroll warrants for the pay periods on and after July 1 amounts for the salaries of the two Secretaries. The Treasurer's Office, however, reduced those warrants to exclude amounts for the salaries of Ms. Peters and Mr. Schrader for work days on and after July 1 and declined to issue payroll checks to them for any period thereafter.

Not being paid, Ms. Peters resigned as Secretary of the Department of Planning on September 21, 2017, when she was appointed as Special Secretary of Smart Growth, a position that does not require Senate confirmation. She was paid for her service in that position. Mr. Schrader remained as Secretary of the Department of Health until January 9, 2018 – the first day of the 2018 Session of the Legislature – when the Governor nominated another person to replace him in that position. Earlier, on September 22, 2017, Mr. Schrader was appointed by the Governor to serve contemporaneously as Special Advisor for Healthcare Financing and Medicaid at the Department of Health at a

5

salary of $174,416.  Although he was not the first person to serve contemporaneously as Secretary of the Department of Health and as head of the Medicaid program and the new position did not require Senate confirmation, the Treasurer refused to pay his salary for that position as well.

This action was filed by Ms. Peters and Mr. Schrader in the Circuit Court for Anne Arundel County on August 2, 2017 but proceeded on an October 13 Second Amended Complaint seeking (1) a writ of mandamus to compel the Treasurer to honor the Comptroller's payroll warrants, countersign salary checks, and pay back wages, (2) a declaratory judgment that their recess appointments in April 2017 were valid, that § 30 is unconstitutional, and that the Treasurer exceeded her authority in deleting their salary payments for periods from and after July 1, 2017, and (3) injunctions restraining the Treasurer and the State from interfering with the payment of their compensation.

The case was resolved by the Circuit Court on cross-motions for summary judgment.  The court held that the recess appointments of Ms. Peters and Mr. Schrader on April 11, 2017 were valid, notwithstanding that the Governor had withdrawn his nomination of those individuals during the 2017 session.  The court held further that § 30 of the FY 2018 Budget Bill was unconstitutional (1) as an impermissible attempt to add in a Budget Bill substantive provisions contrary to existing law, (2) as a violation of the separation of powers provision in Article 8 of the Declaration of Rights, (3) as an intrusion on the Governor's appointment power under Article II, § 11, (4) as an intrusion

6

on the Governor's removal power under Article II, § 15, and (5) as a special law in violation of Article III, § 33.

Apart from those Constitutional violations, the court also found that § 30 violated Md. Code, § 2-102(c) of the Health-General Article and §5-201(a) of the State Finance and Procurement Article, which provide an entitlement to the salaries set by law for the respective Secretarial positions. The court held that the Treasurer had a ministerial duty to honor the Comptroller's warrants and no authority to reduce them. Finally, the court held that the plaintiffs' claims were not barred by State sovereign immunity.

Distressed by all of those rulings, the Treasurer and the State appealed. We granted *certiorari* prior to any proceedings in the Court of Special Appeals, and, as a result, the full conglomeration of issues raised by the parties are before us. We shall begin with the one that triggered all of this – whether the Governor had the authority to make the two recess appointments after having withdrawn his nomination of those individuals during the 2017 session.

THE RECESS APPOINTMENTS

The validity *vel non* of the Governor's reappointment of Ms. Peters and Mr. Schrader in April 2017 is governed by two provisions of the Maryland Constitution – Article II, §§ 11 and 12. Section 11 provides:

> "In case of any vacancy during the recess of the Senate, in any office which the Governor has power to fill, he [or she] shall appoint some suitable person to said office, whose commission shall continue in force until the end of the next session of the Legislature, or until some other person is

7

appointed to the same office, whichever shall first occur; and the nomination of the person thus appointed during the recess, or some other person in his [or her] place, shall be made to the Senate on the first day of the next regular meeting of the Senate."

Section 12 places one limitation on the power conferred under § 11: "No person, *after being rejected by the Senate*, shall be again nominated for the same office at the same Session, unless at the request of the Senate; or be appointed to the same office during the recess of the Legislature." (Emphasis added). There is nothing ambiguous about that section. It has a plain meaning. Read in harmony with § 11, it means that, during a recess of the Senate, the Governor can appoint any suitable person he or she wants, except for a person whom the Senate has previously rejected.

The State argues that those sections do not mean what they plainly say – that the "design" of the Constitution also prohibits the Governor from appointing someone he or she previously had appointed and nominated to the Senate but then withdrew the nomination before the Senate acted on it. That view is drawn in part from a constricted portion of debates in the Constitutional Convention of 1850, where the State contends those sections originated, and in part from the pragmatic notion that allowing the Governor to make recess appointments of persons whose nomination he or she previously withdrew would frustrate the Senate's ability to share in the appointment process.

There are two responses to that argument. The first is the principle announced in *Bd. of Elections v. Snyder*, 435 Md. 30, 53 (2013) and confirmed more recently in *State v. Phillips*, 457 Md. 481, 487 (2018) that "because the Constitution was carefully written by

8

its drafters, solemnly adopted by the constitutional convention, and approved by the people of Maryland, courts lack the discretion to freely depart from the plain language of the instrument." In other words, the "design" of the Constitution is to be determined from its text. If it is thought that the wording of a provision should be changed to reflect a new "design," there is a procedure for doing that. *See* Article XIV, § 1.

The State's attempt to divine some other intent from the debates in the 1850 Constitutional Convention rests on an inaccurate premise. The power of the Governor to make recess appointments and the single limitation expressed in current § 12 did not originate in the 1850 Convention, as the State seems to believe. It was added as an amendment to the 1776 Constitution in 1837 (*see* 1836 Md. Laws, Ch. 148, ratified in 1837), and it was an important amendment.

The 1776 Constitution created what essentially was a parliamentary form of government. Only the House of Delegates was directly elected by the eligible voters, for a one-year term. The Senate was elected for a five-year term by a senatorial electoral college. The Governor was appointed by the Legislature for a one-year term, could not be reappointed more than twice, and had no veto power over legislation. Nearly all gubernatorial executive powers, including the power to make appointments, required the concurrence of a five-member Council, also appointed by the Legislature.

The 1837 amendment was the ultimate product of a reform movement intended to provide a more robust balance of power between the Legislature and the Governor. It provided for the Governor to be directly elected by the people for a three-year term,

9

which gave him an independent political base. It abolished the Council and gave the Governor the power to nominate and, with the advice and consent of the Senate, appoint all officers of the State whose offices were created by law.

In language not, in substance, different from what we now have, the 1837 amendment gave the Governor the power "to fill any vacancy that may occur in any such offices during the recess of the Senate" subject to the one limitation that "[t]he same person shall in no case be nominated by the Governor a second time during the same Session, for the same office, in case he shall have been rejected by the Senate . . . and in case any person nominated by the Governor for any office, shall have been rejected by the Senate, it shall not be lawful for the Governor at any time afterwards, during the recess of the Senate, in case of a vacancy in the same office to appoint such rejected person to fill said vacancy." (Chapter 148, § 16).

If there is an inference that properly may be drawn from this addition, it must be that the Legislature that proposed the amendment and the people who voted for it believed that the one limitation on recess appointments – no appointment of a person previously rejected by the Senate – sufficed to protect the legislative interest. Nothing more was needed.

Fairly read, the debates in the 1850 Convention thirteen years later showed no inclination on the part of a majority of the delegates to reject that approach. If anything, there was greater recognition of the importance of not fettering the Governor's power to make recess appointments. The Constitution that emerged from that Convention

10

abolished annual sessions of the General Assembly and allowed the Legislature to meet only every two years for a maximum of 70 days. Concern was expressed about the prospect of vacancies in important offices lasting for up to two years. Accordingly, although changing some of the language of the 1837 amendment, the Convention retained in its entirety the single limitation on recess appointments. The State overlooks the further fact that the issue of recess appointments also came before the 1864 and 1867 Constitutional Conventions, both of which retained, in nearly identical language and without substantial debate, what existed.

Four times in our history, the Constitution-makers have imposed only the one limitation on the Governor's power to make recess appointments. It is not for this Court, under the guise of Constitutional interpretation, to add another one. The Senate had a fair and reasonable opportunity to reject the Peters and Schrader nominations, and it failed to do so. Absent such a rejection, the Governor was fully empowered to reappoint them once the session ended. The appointments were valid and in no way infringed upon the Constitutional authority of the Senate to advise and consent or to withhold advice and consent.[3]

------

[3] The Dissent regards the Constitutional language that has persisted since 1837 as a previously unnoticed "sort of loophole." We do not regard that language as a loophole. As we have recounted, it was adopted four times – once by the Legislature itself in 1836 and three times by Constitutional Conventions, after mature consideration and debate. Indeed, it is interesting to note that, in the proposed new Constitution that emerged from the Constitutional Convention that met in 1967 (but failed of approval by the electorate), the same approach was adopted. See Art. 4, § 4.32. That Convention also did not regard the single limit of actual Senate rejection as a loophole.

SECTION 30

As noted, it is the addition of § 30 to the FY 2018 Budget Bill, as the Legislature's anticipatory response to the prospect of the Governor doing what he, in fact, did, that raises the host of collateral Constitutional issues. Given that we have concluded, consistently with the views previously expressed by several Attorneys General,[4] that the Governor had the Constitutional authority to make those recess appointments, the response was in no way necessary to protect the Senate's prerogatives, which were not transgressed. The question, however, is not whether that response was necessary, but only whether it is Constitutionally permissible.

**Article III, Section 52**

This Court has traced the history and explained the purpose of Art. III, § 52 of the Constitution, often referred to as the Budget Amendment, on a number of occasions.[5] We need not repeat it other than to note that the Amendment was intended to provide an intelligent way of estimating the income of the State and to assure that expenditures do not exceed that income. Together with Art. III, § 34, it has served to keep the State solvent for more than a hundred years, through wars, recessions, and other calamities.

---

[4] *See* 43 Op. Atty. Gen. 103, 105 (1958) (Sybert, Prescott); 60 Op. Atty. Gen. 91, 99 (1975) (Burch); and *cf.* 21 Op. Atty Gen. 281, 282 (1936) (O'Conor).

[5] S*ee Judy v. Schaefer*, 331 Md. 239 (1993); *Bayne v. Secretary of State*, 283 Md. 560, 567 (1978); *Md. Act. For Foster Child. v. State*, 279 Md. 133 (1977), and cases cited therein.

Section 52(3) requires the Governor to present to the General Assembly, early in its annual Session, a Budget containing "a complete plan of proposed expenditures and estimated revenues" for the coming fiscal year. Section 52(4) requires, in relevant part, that the Budget "embrace an estimate of all appropriations," including those for "the salaries payable by the State and *under the Constitution and laws* of the State". (Emphasis added).[6] Section 52(5) requires the Governor, in addition to the Budget, to deliver to the presiding officers of the House and Senate a Bill "for all the proposed appropriations of the Budget," which those presiding officers are required to introduce in their respective Houses. Section 52(5a) provides that the total appropriations as submitted by the Governor in the Budget and the Budget Bill may not exceed the total estimated revenues and prohibits the Legislature from making any changes that would cause the total appropriations to exceed the total estimated revenues.

Section 52(6) is the critical one in this case, in particular three provisions thereof. First, it prohibits the General Assembly from amending the Budget Bill "so as to affect . . . the payment of any salaries required to be paid by the State of Maryland *by the Constitution thereof."* (Emphasis added). Second, with exceptions not relevant here, it provides that the General Assembly "may not alter the said bill except to *strike out or reduce items therein*, provided, however, that the salary or compensation of any public officer shall not be decreased during his [or her] term of office." (Emphasis added).

---

[6] *See* implementing statutory provisions in Md. Code, §§ 7-101 through 7-109 of the State Finance and Procurement Article.

Third, it provides that the Budget Bill, "when and as passed by both Houses, shall be a law immediately without further action by the Governor." In other words, the Governor has no power to veto the Budget Bill as enacted by the Legislature.[7]

Finally, with three exceptions not relevant here, § 52(14) provides that, in the event of any inconsistency between § 52 and any other provision of the Constitution, § 52 shall prevail.

In fulfillment of his obligations under §§ 52(3) and (5), the Governor included in the FY 2018 Budget Bill, introduced in the House of Delegates as House Bill 150, items for the salaries of the Secretaries of the Departments of Health and Planning.[8] Section 12 of the Bill stated that, pursuant to § 8-102 of the State Personnel and Pensions Article of the Md. Code, "the salary schedule for the executive pay plan during fiscal 2018 shall be as set forth below."

Immediately following that provision, the Bill provided the salary range for the Secretary of the Department of Health as $133,069 to $177,977 and the salary range for the Secretary of the Department of Planning as $114,874 to $153,532, subject to adjustments made pursuant to Md. Code, §§ 8-108 and 8-109 of the State Personnel and

_____

[7] *See*, however, Md. Code, §§ 7-205 through 7-213 of the State Finance and Procurement Article.
[8] As required by § 52(5), the Budget Bill was introduced into the Senate as well, but the General Assembly proceeded on the House Bill.

14

Pensions Article.[9]  *See* 2017 Md. Laws, Ch. 150, § 12, pages 1308, 1310, and 1314.  The General Assembly made no change to those provisions.  Accordingly, except for § 30, Secretaries Peters and Schrader would have been entitled to receive those respective salaries, subject to any adjustments under §§ 8-108 or 8-109.  *See* Md. Code, State Finance and Procurement Article, § 5-201(a) and Health-General Article, § 2-102(c).

To frame the issue under § 52, it is clear that the Legislature could have stricken or reduced the items providing for the salaries of the two Secretaries.  The only limits on striking or reducing items for the salaries of Executive Branch officials are the preclusion of striking or reducing a salary required to be paid by the Constitution or that would decrease the official's compensation during his or her term of office.  Neither of those exceptions applies here; the salaries of the Secretaries are not compelled by the Constitution and, as at-will appointees, they have no fixed term of office.

If there is an impediment to what the Legislature did, it arises in part from the actual text of the "strike out or reduce" provision and in part from the last clause of § 52(6) removing from the Governor any control over the Budget Bill as enacted by the General Assembly, from which has sprung the principle that the Legislature may not include substantive legislative provisions in the Budget Bill.  The articulation of that

_____

[9] Those sections permit increases and decreases in pay rates for employees under the Executive Pay Plan.  There is no dispute that the effective salary for Secretary Peters for FY 2018 would have been $137,749 and the salary for Secretary Schrader would have been $174,417.  *See also* § 7-109 of the State Finance and Procurement Article, requiring the Budget Bill to contain a separate section that includes the proposed salary schedule for the Executive Pay Plan.

15

principle is found most clearly in a 1952 Opinion of Attorney General (and later Chief Judge of this Court) Hall Hammond (37 Op. Atty. Gen. 139) and the Opinion of this Court in *Bayne v. Secretary of State, supra*, 283 Md. 560.

As we have indicated, the actual power given to the General Assembly in § 52(6) is limited to "strik[ing] out or reduc[ing] items" in the Governor's Budget. Nothing is said about placing conditions on how items not stricken may be spent. Several Attorneys General, however, and, more important, this Court in *Bayne*, recognized that "[t]he General Assembly's authority to reduce or strike out an item of appropriation necessarily includes the authority to condition or limit the use of money appropriated . . . *provided the condition or limitation is directly related to the expenditure of the sum appropriated*, does not, in essence, amend other substantive legislation or administrative rules adopted pursuant to legislative mandate, and is effective only during the fiscal year for which the appropriation is made."[10]  *Bayne*, 283 Md. at 574 (Emphasis added).

Except as otherwise expressly provided in § 52(6) itself, there are no State-law limits or conditions on the Legislature's power to strike or reduce an item outright. The conditions noted in *Bayne* are placed on this extended inferred power to place limitations on how an approved appropriation may be spent, because that raises the specter of

---

[10] *See* 37 Op. Atty. Gen. 139 (1952) (Hammond) (declaring the budget language invalid); 38 Op. Atty. Gen. 110 (1953 (Rollins) (declaring the budget language invalid); 48 Op. Atty. Gen. 19 (1963) (Finan) (declaring the budget language valid); 59 Op. Atty. Gen. 70 (1974) (Burch) (declaring some conditions invalid and some valid)  63 Op. Atty. Gen. 60 (1978) (Burch) (declaring conditions valid); 75 Op. Atty. Gen. 3 (1990) (Curran) (declaring conditions invalid).

departing from the function of the Budget Bill, which "is to appropriate money, not to legislate generally." *Bayne*, at 574. This was explained by Attorney General Hammond in his 1952 Opinion:

> "The Legislature may not, under the guise of incorporating in the Budget Bill language purporting to have the effect of law, make that language become law. No law can be passed in Maryland except by both Houses of the General Assembly and the signature of the Governor, or the overriding of his veto if he disapproves the proposed law. The function and effect of the Budget Bill as a law is restricted by its purposes, and the mechanics set up by Section 52 of Article III carry out those purposes. That function is to appropriate money, not to legislate generally."

37 Op. Atty. Gen., *supra* at 141.

The argument is made here that the provisions of § 30 do, in fact, constitute substantive legislation that conflicts with Health-General Article, § 2-102(c) and State Finance and Procurement Article, § 5-201(a), not to mention Articles of the Constitution dealing with the Governor's authority to appoint and remove Executive Branch officials (and District Court judges), and the Circuit Court found such a conflict. Our concern focuses more directly on whether § 30 falls within the permissible ambit of the extended authority to attach conditions on the expenditure of approved appropriations, and *Bayne* is the guidepost for that.

Commonly, including all throughout the FY 2018 Budget Bill and Budget Bills generally, conditions imposed on the expenditure of approved appropriations follow immediately the appropriation to which the conditions apply and, in their text, refer to and clearly attach to that appropriation. *See*, by way of just a few examples, conditions

attached to the expenditure of appropriations for the Office of the Secretary of the Department of Transportation on page 1145 of the 2017 Laws, the Office of the Secretary of the Department of Health on page 1171 of the 2017 Laws, and the Office of the Secretary of the Department of Human Resources at page 1187 of the 2017 Laws.

The conditions at issue here are not of that type. They are not only in no proximity to the appropriations for the salaries of Secretary Peters or Secretary Schrader, which itself is not dispositive, but make no mention of them. Instead, they announce that "no funds in this budget" may be used to pay those two people. Those are not conditions "directly related to the expenditure of the sum appropriated." The relational requirement set forth in *Bayne* is not merely a helpful suggestion. It has meaning, and it is not in any sense an onerous requirement, as the FY 2018 Budget Bill and previous Budget Bills themselves attest.

If the Legislature chooses to place some limit or condition on the expenditure of an appropriation it has approved, it must "directly" tie that limit or condition to the particular appropriation rather than leave it hovering aimlessly over the entire State Budget. That may not in all instances insulate the limit or condition from challenge on the ground that it constitutes impermissible law-making, but at least it brings it into compliance with the relational requirement of *Bayne*. Because § 30 is in no way tied to

18

the appropriations for the salaries of the two Secretaries, it exceeds the authority of the Legislature under § 52(6) and is invalid, of no legal effect, and unenforceable.[11]

## Other Issues

In light of this conclusion, we need not address whether § 30 constitutes an impermissible special law under Art. III, 33, contravenes the Governor's powers of appointment and removal under Art. II, §§ 11 or 15, or violates the separation of powers principle under Article 8 of the Md. Declaration of Rights, or whether the Treasurer has the authority to reduce payroll warrants issued by the Comptroller.

With respect to the State's argument that the Secretaries' action to recover back pay is precluded by the State's sovereign immunity, we regard the nature of their action, though seeking mandamus, declaratory, and injunctive relief, as essentially one for breach of contract – breach of a written contract documented in the commissions issued to them, in the sections of the Code providing for the payment of their salaries, and in the appropriations in the FY 2018 Budget and Budget Bill.  Md. Code, § 12-201 of the State Government Article precludes the State from raising the defense of sovereign immunity in a contract action based on a written contract that an official of the State (including the Governor) executed for the State within the scope of his or her authority.  At least

---

[11] The Dissent is based on the proposition that a condition on how an approved appropriation may be spent does not have to make any reference to the appropriation.  If that is so, the first requirement stated in *Bayne,* that the condition be "directly related" to the appropriation has no meaning and *sub silentio* is overruled, which neither the Treasurer nor the State even suggests, much less argues.

19

implicit in those documents is the promise that the State would pay the Secretaries the salaries provided by law for the services they rendered, and warrants for those salaries were properly issued by the Comptroller pursuant to his statutory authority.[12]

## Conclusion

For the reasons stated in this Opinion, we shall vacate the Order issued by the Circuit Court and remand the case to that court for entry of: (1) a declaratory judgment declaring that Ms. Peters and Mr. Schrader are entitled to be paid the salaries set forth in the FY 2018 Budget for the times they served as Secretaries of their respective Departments, (2) a writ of mandamus requiring the Treasurer to honor the warrants for the payment of those salaries issued by the Comptroller and to issue payroll checks

---

[12] The Dissent complains that this response to appellants' sovereign immunity defense was not raised by appellees and that the State has had no opportunity to respond. This Court, in several cases, has distinguished between the raising of a new *issue,* which *ordinarily* is not allowed, and the raising of an additional *argument*, even by the Court, in support or opposition to an issue that *was* raised, which is allowed. *See Crown Oil v. Glen*, 320 Md. 546, 560-61 (1990); *Medical Waste v. Maryland Waste*, 327 Md. 596, 604-05 (1992); *O'Leary v. Shipley*, 313 Md. 189, 196 (1988).

In that regard, we note that it was the *State* that raised the sovereign immunity defense, to an action that clearly alleged a right to back pay for employment based solely on written documents and that it should have been aware of the statute that has been on the books since 1976 precluding it from raising that defense to an action based on a written contract. In both the Circuit Court and this Court, appellees argued that sovereign immunity did not apply to their action, and the Circuit Court ruled that they were correct. We are affirming that conclusion by simply taking judicial notice of both the underlying written documents, which are matters of public record that were before the Circuit Court, and clear and long-standing provisions of the Maryland Code that support the Circuit Court's conclusion. This is not a *deus ex machina*.

therefor, and (3) an Order enjoining the State from interfering with the payment of those

salaries.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS IN CONFORMANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLANTS.**

21

Circuit Court for
Anne Arundel County
Case No. C-02-CV-17-2227
Argued 5/7/18

IN THE COURT OF APPEALS

OF MARYLAND

No. 72

September Term, 2017

---

NANCY K. KOPP, *ET AL.*

V.

DENNIS R. SCHRADER, *ET AL.*

---

Barbera, C.J.,
Greene
Adkins
McDonald
Hotten
Getty
Wilner, Alan M. (Senior Judge,
Specially Assigned),

JJ.

---

Concurring and Dissenting Opinion
by McDonald, J.,
which Barbera, C.J., and Adkins, J., join.

---

Filed: June 21, 2018

Although I agree with much of the scholarly and very readable Majority opinion, I would decide this case differently. In my view, the Majority opinion's analysis of the budget issue adds a new criterion for assessing conditions placed on appropriations in the State budget. That criterion elevates form over substance and is not required by the State Constitution or the case law. In addition, the Majority opinion relies on a dubious contract rationale for awarding a monetary judgment in favor of the Appellees – a theory that was not espoused by the Appellees and that appears *for the first time* in this case in the Majority opinion.

If the only consequence of this decision were that Mr. Schrader and Ms. Peters received some compensation for the services they rendered after they each accepted a second consecutive recess appointment – even though they were aware at the time that the Legislature had eliminated the compensation for such an appointment – this decision would be of little import. However, the Majority opinion may well have unintended collateral consequences**.**

*Checks and Balances*

The State Constitution contemplates appointment of civil officers of the State – such as the Secretary of Health and the Secretary of Planning – by the Governor, subject to confirmation by the Senate, as part of the constitutional system of checks and balances. *See* Alfred S. Niles, Maryland Constitutional Law (1915) at 110 ("it is evident that the [constitutional] convention which framed the present Constitution was unwilling to confer the power of appointment to office upon the governor alone, except in cases of absolute necessity"); Dan Friedman, The Maryland State Constitution: A Reference Guide (2006)

at 69-70 (noting the intention of the framers of the State Constitution "to carefully circumscribe the Governor's appointment powers, and in every case possible, to temper those appointment powers with the advice and consent of the State Senate").[1]

I agree with the Majority opinion that there is a sort of loophole in the constitutional design that allows a Governor to maintain the Governor's preferred candidates in office without Senate confirmation by withdrawing a nomination before rejection by the Senate and making repeat recess appointments. However, there is a check on the Governor's use of that loophole – if the General Assembly chooses to exercise it. That check is the Legislature's power under the State Constitution to strike, reduce, or condition appropriations in the State budget, including those related to the compensation of appointees like the Appellees. That is how a system of checks and balances works.[2]

*Conditions on Budget Appropriations and the Bayne Criteria*

As the Majority opinion indicates, it is well-established that, pursuant to Article III, §52(6) of the Maryland Constitution, the General Assembly may strike, reduce, or place

---

[1] As the Majority opinion notes, Article II, §11 of the State Constitution provides that the Governor is to submit the name of a recess appointee to the Senate for confirmation at the beginning of the next session of the Senate if the Governor wishes to retain that person in the office. Majority slip op. at 2. The Constitution thus obviously contemplates that a recess appointee will ultimately be subject to Senate confirmation.

[2] For example, in this case a repeat recess appointment of the same individual to the office of Secretary of Health, which had the effect of circumventing Senate confirmation of that individual, was "checked" by the Legislature's elimination of the appropriation for such an appointment. Another individual, apparently acceptable to both the Governor and the Senate, was eventually nominated for the post and was confirmed by the Senate. Had the Legislature not exercised its budget authority, there might well have been a three-peat, or more, avoiding Senate confirmation.

conditions on appropriations made in the budget bill submitted by the Governor. Majority slip op. at 15-16. As the Majority opinion also concedes, the powers conferred by Article III, §52 generally take precedence over other provisions of the State Constitution, to the extent that there is any conflict. Maryland Constitution, Article III, §52(14).

The leading authority on the General Assembly's power to place conditions on appropriations in the State budget is *Bayne v. Secretary of State*, 283 Md. 560 (1978). That case concerned a budget condition that restricted the expenditure of funds appropriated in the State budget to compensate Medicaid providers for abortions in specified circumstances. While that case primarily concerned whether the budget bill could be petitioned to referendum, the Court held that "[t]he General Assembly's authority to restrict or strike out an item of appropriation necessarily includes the authority to condition or limit the use of the money appropriated …" 283 Md. at 574. The Court adopted the following formula for assessing the validity of a condition placed on the budget by the General Assembly. The budget condition must:

1. Be directly related to the expenditure of the sum appropriated;

2. Not amend substantive legislation or administrative rules adopted pursuant to legislative mandate; and

3. Be effective only during the fiscal year for which the appropriation is made.

*Id*. In *Bayne*, the Court found that restriction on Medicaid provider compensation satisfied all three criteria. *Id.*

3

*Section 30 of the Fiscal Year 2018 Budget Bill*

This case turns on the validity of §30 of the Fiscal Year 2018 Budget Bill, which was enacted by the General Assembly on March 28, 2017. Chapter 150, §30, Laws of Maryland 2017. The Majority Opinion quotes the four paragraphs of §30 in their entirety and there is no need to repeat that quotation here. *See* Majority slip op. at 3-4. In summary, §30 prohibits the expenditure of funds appropriated in the budget bill to pay the salary of a Secretary, Acting Secretary, Deputy Secretary, or Assistant Secretary of an agency under specified circumstances that would amount to circumvention of Senate confirmation of the appointment of an individual in charge of an agency. Pertinent to this case, §30 prohibits such an expenditure if an individual received a recess appointment to the position during 2016 and whose nomination to the permanent post was either rejected by the Senate, withdrawn by the Governor, or otherwise not acted upon. (It also prohibits such expenditures in other circumstances not pertinent to this case, such as when an individual serving as Acting Secretary of an agency continues to carry out the responsibilities of the position without being nominated to the office). Section 30 explicitly does not prohibit the employment, and presumably compensation, of such an individual in another agency or in a non-leadership position in the agency for which the individual received a recess appointment.

Section 30 sets forth one set of the many conditions that the Legislature placed on the appropriations proposed in the Fiscal Year 2018 budget bill. Although §30 of the Fiscal Year 2018 budget bill happened to be triggered by the Governor's subsequent decision to make two repeat recess appointments, there is nothing unusual about this provision.

4

Similar, although not identical, provisions have appeared in budget bills since 2004 as a check on the temptation a Governor might have to circumvent the confirmation process.[3] To assess the validity of §30, one must apply the *Bayne* criteria.

*Application of the Bayne Criteria to §30*

Application of the *Bayne* formula to §30 of the Fiscal Year 2018 budget bill is straightforward. First, §30 clearly relates specifically to the expenditure of funds for the salaries of a Secretary, Acting Secretary, Deputy Secretary, or Assistant Secretary of an agency in specified circumstances. Identical language could have been appended to the general appropriation of each department with a Secretary, Acting Secretary, Deputy Secretary, or Assistant Secretary throughout the budget bill, but thankfully for the reader (and the environment), this condition is clearly made applicable to all such appropriations but stated only once in the document.

Second, the condition amends no substantive legislation or regulation. It simply eliminates an appropriation for compensation – an appropriation that would otherwise be

---

[3] *See* Chapter 143, §32, Laws of Maryland 2016; Chapter 310, §34, Laws of Maryland 2015; Chapter 462, §31, Laws of Maryland 2014; Chapter 423, §30, Laws of Maryland 2013; Chapter 148, §31, Laws of Maryland 2012; Chapter 395, §36, Laws of Maryland 2011; Chapter 482, §35, Laws of Maryland 2010; Chapter 484, §36, Laws of Maryland 2009; Chapter 335, §29, Laws of Maryland 2008; Chapter 487, §37, Laws of Maryland 2007; Chapter 216, §38, Laws of Maryland 2006; Chapter 429, §46, Laws of Maryland 2004.

It is not unusual for a legislative body to enforce a constitutional advice and consent role through the exercise of its fiscal powers. Since 1863, Congress has included a similar provision restricting pay of holdover recess appointees in the federal Pay Act. *See* 5 U.S.C. §5503(a); *see also* 12 Stat. 642, 646 (1863).

made in the same budget bill – for repeat recess appointments.  This is consistent with the substantive law concerning compensation of these officials, which provides that they are to receive the salaries appropriated in the budget but does not dictate what that appropriation should be.  *See* Maryland Code, Health-General Article, §2-102(c) (Secretary of Health); State Finance & Procurement Article §5-201(e) (Secretary of Planning); *see also* State Personnel & Pensions Article ("SPP"), §8-104(c) (State pay rates "subject to any limitations included in the State budget").[4]

Finally, the condition is effective only during Fiscal Year 2018, as it applies only to funds appropriated in the Fiscal Year 2018 budget bill.

*The New Criterion in the Majority Opinion*

The Majority opinion appears to accept that §30 satisfies the second and third *Bayne* criteria – *i.e.*, that it does not amend substantive law and that it is effective only during the fiscal year of the budget bill.  *See* Majority slip op. at 17.  However, the Majority opinion is concerned about whether the first of the *Bayne* criteria – whether the condition set forth in §30 "directly relates" to expenditure of the sum appropriated.  The Majority opinion begins from the premise that, "commonly," budgetary conditions "follow immediately the appropriation to which they apply" in the text of the budget bill.  *Id.* at 17-18.  It then observes that §30 does not appear immediately after the text of a specific appropriation or expressly reference specific positions – in particular, the appropriations for the salaries of

_____

[4] The Majority opinion recites the statutory provision (SPP §8-102) that provides for an executive pay plan, but fails to acknowledge this limitation.  *See* Majority slip op. at 14.

6

the Secretary of Health or Secretary of Planning – and concludes that §30 therefore does not relate directly to an appropriation. Majority slip op. at 18.

It is true that many budget conditions physically appear in a budget bill immediately beneath one appropriation – in particular, when the condition affects only one appropriation – but that is not always the case. A brief perusal of any budget bill reveals that there are numerous conditions in the bill, apart from §30 and its past analogs, that affect several appropriations and that are not adjacent to any of the appropriations that they affect.[5] In lieu of §30, the drafters could have appended the same language to every appropriation containing the salary of an agency head, thereby expanding an already lengthy bill. But the placement of §30 and these other sections within the document does not detract from their meaning or effectiveness.

The Majority opinion appears to recognize this fact by hedging its assertion concerning its textual proximity test with the adverb "commonly," and seems to concede that a cross-reference to the appropriations subject to the condition would suffice. But it apparently would require that cross-reference to be made by listing the conditioned appropriations and then proceeds as if textual proximity or some kind of listing is a strict requirement. Majority slip op. at 17-18. Again, the drafters could have listed in §30 every agency with a salary appropriation for a Secretary, etc., but such a formality would have added nothing to the meaning or clarity of §30.

---

[5] *See, e.g.,* Chapter 150, §§39, 40, 41, 42, 43, Laws of Maryland 2017.

The Majority opinion's new criterion does not appear in *Bayne*. There is nothing inconsistent with *Bayne* or Article III, §52 of the Constitution for a budget condition that applies to several appropriations to be clearly and concisely expressed in a separate section, such as §30, when that section describes the appropriations that it conditions. Other such conditions appeared in the 2017 budget bill and in prior budget bills.[6] As was explained nearly 30 years ago:

> Although a limitation must directly relate to the expenditure of the sum appropriate[ed], there is no legal requirement that the limitation be an amendment to the particular item in the Budget Bill to which it relates. It is only a matter of practice that a limitation is ordinarily added as an amendment to a particular item in the Budget Bill. *If a limitation is to apply to several or all items of appropriation, there is clearly no objection to adding the limitation to the bill as a separate section. The only requirement is that the amendment make it clear that it is a limitation on several or all appropriations, as the case may be.*

Letter of Assistant Attorney General Richard E. Israel[7] to William S. Ratchford, Director, Department of Fiscal Services (January 29, 1991) (emphasis added).

Here, §30 clearly applies to the appropriation for salaries in any department that has a Secretary, Deputy Secretary, etc. There are a finite number of such agencies with salary appropriations in the budget bill. The Department of Health and the Department of

---

[6] *See, e.g.*, Chapter 150, §47, Laws of Maryland 2017; Chapter 482, §45, Laws of Maryland 2010; Chapter 216, Laws of Maryland 2006.

[7] The late Mr. Israel was a widely-respected expert on the history and interpretation of the budget provisions of the Maryland Constitution. *See, e.g.*, Richard E. Israel, *A History of the Adoption of the Maryland Executive Budget Amendment* (2004), available at the Archives of Maryland Online, <http://aomol.msa.maryland.gov/megafile/msa/speccol/sc2900/sc2908/html/israel.pdf> (last visited June 5, 2018).

8

Planning are two.  Section 30 thus directly applies to the appropriation for salaries in those two agencies.  There is no mystery as to what appropriations §30 conditions.  To the extent that the Majority would require that §30 redundantly list each department with a Secretary or Deputy Secretary, such a requirement would be as formalistic as its textual proximity test.  It would not add to the clarity or meaning of the budget condition and is not required by *Bayne*.

In applying a textual proximity/specific listing test, the Majority opinion would impose a drafting convention on the writers of budget conditions that we do not impose on the drafters of other legislation or on ourselves.  It is not uncommon in the law for some provisions not to be in proximity to, or to specifically list, other provisions that they clearly modify, condition, or define.  For example, in the reorganization of the Maryland Code known as code revision, statutory provisions defining terms and limiting the scope of other statutory provisions in the same article, or even in other articles of the code, are grouped together at the beginning of an article rather than being repeated throughout the article or the code.  The definition and scope provisions do not list every other statutory provision containing a defined term or limited by the scope provision.  *See, e.g.,* Maryland Code, General Provisions Article, §1-101 *et seq*. (rules of interpretation applicable to statutory provisions in all articles of the code); State Finance & Procurement Article ("SFP"), §1-101 (definitions applicable throughout Division I of SFP); SFP §5-102 (limiting scope of title 5 of SFP in relation to other laws).  We follow the same convention in drafting our rules of practice and procedure.  *See* Title 1, Chapter 200, of the Maryland Rules (setting forth rules of construction, definitions, and methods for calculating deadlines applicable to

9

numerous other rules). This very sensible method of drafting law avoids needless repetition of identical language in multiple locations throughout the statutory law and rules. Nothing prevents the drafters of the budget bill and its amendments from taking advantage, although perhaps not as elegantly, of this approach. Indeed, it has been employed for many years in drafting the budget bill.

*The Practice of Conditioning Multiple Salary Appropriations in One Section*

Like §30 and its analogs in many previous budget bills, there is another section that regularly appears in the annual budget bill, that conditions many appropriations for salaries, but that is not in textual proximity to, and does not explicitly list, all the appropriations that it potentially affects. That provision appears in §4 of the Fiscal Year 2018 budget bill. Chapter 150, §4, Laws of Maryland 2017.

Section 4 provides that no funds appropriated in the budget bill shall be paid as compensation to an individual appointed to an office with respect to that office if the appointment would result in the individual holding two "offices of profit."[8] Under Article

---

[8]Section 4 provides, in pertinent part:

> If any person holding an office of profit within the meaning of Article 35 of the Declaration of Rights … is appointed to or otherwise becomes the holder of a second office within the meaning of Article 35 …, then no compensation or other emolument, … shall be paid from any funds appropriated by this bill to that person for any services in connection with the second office.

35 of the Maryland Declaration of Rights,[9] an individual may not occupy more than one "office of profit." As a member of the Majority correctly pointed out at oral argument in this case, an individual appointed to a second such office is deemed to automatically resign from the first office that he or she holds. *See Hetrich v. County Commissioners of Anne Arundel County*, 222 Md. 304 (1960); *Truitt v. Collins*, 122 Md. 526 (1914). The automatic removal from the first office occurs even if the individual is willing to *voluntarily* forgo compensation for the second office, as the second office remains one of profit despite the holder's forbearance. *See, e.g., Howard County Commissioners v. Westphal*, 232 Md. 334, 339-40 (1963); 76 *Opinions of the Attorney General* 347, 349-50 (1991). In eliminating compensation for the second office as a matter of law, regardless of the appointee's decision whether to accept that compensation, §4 eliminates a primary characteristic of an office of profit and prevents the individual's automatic removal from the first office. *See* 76 *Opinions of the Attorney General* 347, 350 n.2 (1991) (describing purpose and operation of budget condition in 1991 budget bill that is identical to §4 of 2017 budget bill). Thus, §4 has the effect of allowing a Governor the flexibility to appoint those whom the Governor prefers to positions of responsibility without inadvertently also

_____

[9] Article 35 of the Declaration of Rights provides, in pertinent part:

> That no person shall hold, at the same time, more than one office of profit, created by the Constitution or Laws of this State; …

11

removing them from office.[10]  For that reason, a version of §4 has appeared in budget bills for decades.[11]

Like §30, the language of §4 appears just once in the budget bill, clearly conditions salary appropriations throughout the budget bill, is not in textual proximity to all of those appropriations, and does not expressly cross-reference all of the appropriations that it affects.  Like §30, §4 was not peculiar to the Fiscal Year 2018 budget bill.

*Alternative Arguments for Ignoring §30*

The Majority opinion alludes to various alternative arguments offered by Mr. Schrader and Ms. Peters for ignoring §30, but does not address those arguments.  I will follow that lead, as none of those arguments appears to be particularly compelling.

*The Contract Rationale*

In holding that Mr. Schrader and Ms. Peters may recover a monetary judgment against the State in this case, the Majority opinion concludes that sovereign immunity does not preclude such an award.  The Majority opinion reasons that Mr. Schrader and Ms.

---

[10] For example, the Majority opinion notes that, after receiving a recess appointment as Secretary of Health, Mr. Schrader was also appointed to the position of Special Advisor for Healthcare Financing and Medicaid, which apparently is the "head of the Medicaid program."  Majority slip op. at 5-6.  The Secretary of Health is an office of profit.  I do not purport to decide whether Special Advisor is also an office of profit for purposes of Article 35 – although if the Majority opinion's description is correct, it well could be.  If it is, a Secretary of Health who accepted the position of Special Advisor would be deemed to have resigned as Secretary of Health, unless the compensation attached to the office of Special Advisor was eliminated by operation of the budget bill.

[11] A version of that provision has conditioned the salary appropriations in every budget bill since at least 1985.  *See, e.g.* Chapter 106, §21, Laws of Maryland 1985.

Peters asserted a claim for breach of contract and therefore came within the statutory exception to sovereign immunity for an award of contract damages.[12] The Majority opinion spends only three sentences (and a footnote) outlining that theory. Majority slip op. at 19-20.

The contract rationale is a *deus ex machina* for resolving this case. No contract claim was asserted in the complaint in this case. As best I can tell, such a theory was not presented to the Circuit Court. There is no mention of a breach of contract theory in the 35-page opinion of the Circuit Court. Mr. Schrader and Ms. Peters did not assert such a theory before us, either in brief or at oral argument. Indeed, they reiterated several times that this is not an action for damages. It goes without saying that the State has had no opportunity to respond to this theory.[13]

The timing of the repeat recess appointments perhaps explains why Mr. Schrader and Ms. Peters did not assert a breach of contract rationale. At the time Mr. Schrader and Ms. Peters received their second consecutive recess appointments, the Fiscal Year 2018

---

[12] *See* Maryland Code, State Government Article, §12-201.

[13] In its footnote, the Majority opinion argues that the contract rationale is not a new *issue*, but rather a new *argument* that may be raised on appeal and cites three cases for that proposition. Majority slip op. at 20 n. 12. An examination of those decisions reveals that, in each of the three cases, the new argument was raised by *one of the parties* in the Court of Special Appeals and briefed by both parties in that court and this Court (one of the cases ultimately skipped decision by the intermediate appellate court as this Court issued a bypass writ of *certiorari*).

By contrast, in this case, the contract rationale is entirely an invention of the Majority opinion – a rationale based on a cause of action not asserted in the complaint and arguably disclaimed by the Appellees.

budget bill had already been enacted and explicitly stated that no funds were appropriated to fund such an appointment. Everyone was on notice of that fact. It is difficult to conceive that there was a meeting of the minds as to their compensation or the formation of a contract at that time.

It certainly seems fair to find a way to pay Mr. Schrader and Ms. Peters for the services they performed while this controversy was ongoing,[14] if there is a legal way to do so. There may be a mechanism for doing so, but finding a contractual remedy where no contractual right exists is not the way to do so. What unintended consequences might flow from this offhand holding? It has the potential to hamstring one method by which the Governor and Legislature, or the Board of Public Works, balance the State budget in times of fiscal distress. *See* 76 *Opinions of the Attorney General* 330 (1991) (describing various ways in which the Governor, Legislature, and Board of Public Works may eliminate appropriations in the State budget for State government positions).

---

[14] The Majority opinion suggests that the Legislature could have resolved this dispute "simply, quickly, and cleanly" by filing a declaratory judgment action to challenge the constitutionality of the Governor's exercise of his constitutional powers to make repeat recess appointments of Mr. Schrader and Ms. Peters instead of enacting §30. Majority slip op. at 1. Of course, the Governor made the repeat recess appointments on April 11, 2017 *after* the Legislature had enacted §30 on March 28, 2017 as part of the budget bill. In any event, the same might be said of Appellees' challenge to the Legislature's exercise of its constitutional budgetary powers. Mr. Schrader and Ms. Peters did not file this action until more than four months after enactment of the budget bill containing §30. A more timely declaratory judgment action might have resolved the issue before they provided services without compensation.

*Summary*

The Majority opinion would add a new criterion for evaluating budget conditions. It also recognizes a contractual right to compensation in dubious circumstances. These are not narrow holdings. In my view, they are also incorrect.

Chief Judge Barbera and Judge Adkins have advised that they join this opinion.